UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61763-SMITH/REID

SYLVIA SALERNO,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    This matter is before the Court on Sylvia Salerno's ("Plaintiff") Motion for Summary Judgment and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Defendant") Motion for Summary Judgment [ECF No. 15, 17]. These motions were referred to the Undersigned by the Honorable Rodney Smith for a Report and Recommendation. [ECF No. 2]. For the reasons stated below, the Undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

    **I.**    **PROCEDURAL BACKGROUND**

    Plaintiff appeals the denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff filed the SSI application on April 22, 2020,

1

and the DIB application on October 16, 2020, alleging an onset date of May 14, 2019. [R. 17].[1] Following the denial of her claim at the initial and reconsideration levels, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). *Id.* Plaintiff's request was granted, and the telephonic hearing was held on October 22, 2021, before ALJ Valencia Jarvis. [R. 17, 56]. Plaintiff was represented by counsel, and both Plaintiff and a Vocational Expert ("VE") testified at the hearing. [R. 17]. On June 29, 2021, the ALJ issued a decision, finding Plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. [R. 32]. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review. [R. 123–25]. Plaintiff now seeks judicial review of the ALJ's decision, and both Parties moved for summary judgment. [ECF No. 15, 17]. Plaintiff has exhausted her administrative remedies, and the case is ripe for review under 42 U.S.C. § 1383(c).

## II.   STANDARD OF REVIEW

### A. Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 F. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

---

[1] All references to "[R. __]" are to the record of the administrative proceeding filed by the Commissioner at ECF No. 12.

If the Commissioner's decision is supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. The reviewing court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**B. Regulatory Framework**

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if he is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that he is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether he is currently engaged in substantial gainful activity; (2) whether he has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the

severity of a specified impairment in the Listing of Impairments; (4) whether he can perform his past relevant work despite his impairments; and (5) whether he can perform other work found in the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

### III.   THE RECORD

#### A. Plaintiff's Testimony

Plaintiff testified at a hearing before the ALJ in October 2021. [R. 56]. She was 51 years old. [R. 62]. She testified that because of a car accident in 2014, she had multiple back and neck surgeries and was diagnosed with "arachnoiditis in the cervical and lumbar multilevel degenerative discs." [R. 63–64]. She has a high school education and has a valid cosmetologist license. She worked as a barber until May 2015 when she claimed she was no longer able to work. [R. 62–63]. Her last surgery was I July 2015 where she had "cervical neck fusion, 5-6 and 6-7, with a cage disc replacement." [*Id.*] Plaintiff alleged disability due to multilevel spondylosis and degenerative disc disease of the cervical and lumbar spine post-spinal surgeries at C5-C6 and L5-S1. [R. 20].

Plaintiff testified she experiences headaches from the back of the head extending to the shoulders and spreading to the arms, hands, and fingers. [R. 67]. She testified that the pain, numbness, tingling, and burning sensation down the arms and hands are caused by cervical radiculopathy. *Id.* Further, she explained that due to lumbar radiculopathy, she experiences pain in her shoulder blades, lower back, and buttocks, which travels down her legs with sciatica down to the foot. [R. 67–68]. According to her testimony, her pain is worse on her right hand, thus causing her difficulty in grasping items and making a fist. [R. 68]. Regarding work, Plaintiff stated the last time she worked was in May 2015 as a barber. [R. 63].

Plaintiff further testified that she also has bowel and urinary incontinence, which started in 2014, and she has to wear pads or depends daily. [R. 71]. In addition, Plaintiff expressed that for the past year and a half she had chest pain that required her to lie down. [R. 79]. Plaintiff stated that she takes medication for the chest pains. *Id.*

The ALJ questioned Plaintiff regarding her medications. [R. 65]. Plaintiff stated she took medication for depression, for pain, high cholesterol and for muscle spasms and that the medication made fatigued and dizzy [R. 65-67].

Regarding her daily living activities, Plaintiff testified that since the accident in 2014, she can sit for only five to ten minutes before she has to "change positions or stand up," and can stand up for 10-15 minutes. She could walk less than one block. [R. 76–77]. Additionally, she can only lift light things—weighing less than five pounds—such as plates, and that even a gallon container is too heavy. [R. 69, 78]. Further, she explained she has problems brushing her teeth due to her hands cramping up and having a burning sensation in her arms, shoulders, and fingers. [R. 70]. She also testified to having limitations when bending, crawling, crouching, and squatting. *Id.*

B. **Medical Evidence**

　　i.　**October 2014 and July 2015**

In March 2014, Plaintiff was injured in a motor vehicle accident. As a result, Plaintiff received pain medication, therapy, and epidural steroid injections, but her symptoms did not subside. [R. 473]. Thus, in October 2014, Plaintiff underwent lumbar function surgery due to neck, back pain, and radicular pain in her left leg. [R. 473–74]. Later, in July 2015, Plaintiff had cervical fusion surgery after continuing pain in her neck and left arm as well as radicular pain in her left upper extremities to relieve her symptoms. [R. 475–76]. Plaintiff, however, continued to report neck and back pain with associated tingling, numbness, and weakness in her legs and arms

bilaterally. [R. 518]. In October 2020, based upon her description of her pain and limitations and an examination by Dr. Lowell Davis at the Florida Spine & Pain Center, she was diagnosed with lumbar post laminectomy syndrome, bilateral lumbar radiculopathy, low back pain, cervical radiculopathy, cervicalgia, and chronic non-malignant pain. [R. 520]. Dr. Davis ordered new MRIs of Plaintiff's lumber and cervical spine. *Id*.

      **ii.**      **Psychological Consultative Examinations**

Lisa Rabinowitz ("Dr. Rabinowitz"), PysD., examined Plaintiff in November 2017. [R. 512]. Plaintiff reported during her examination that she was constantly in pain; more specifically, she reported pain in her left arm along with numbness pain in her shoulder blades and neck. [R. 513]. Moreover, Plaintiff stated having difficulty walking, reaching, bending, lifting, sitting for long periods of time, cooking, and doing housework due to her pain; thus, she reported not doing any house chores. *Id.* Regarding her ability to socialize, Plaintiff stated she kept to herself. Further, Plaintiff denied having a psychological history, but she had experienced symptoms of depression since her accident in 2014. [R. 514]. Ultimately, Dr. Rabinowitz diagnosed Plaintiff with Adjustment Disorder with Depressive Mood with a fair prognosis. *Id.* Dr. Rabinowitz reported that Plaintiff was cognitively capable of handling funds on her behalf. *Id.*

Addys Prieto ("Dr. Prieto"), PsyD., a clinical psychologist, examined Plaintiff on two occasions. In October 2020, Plaintiff reported experiencing consistent pain and depression for the last six years. [R. 530]. Moreover, Plaintiff reported decreased motivation, interest, poor concentration, difficulty sleeping, increased anxiety, irritability, and appetite. *Id.* Dr. Prieto found that Plaintiff was oriented to person, place, and time and was aware of basic historical and geographical concepts. [R. 529]. Further, Plaintiff was able to follow instructions and complete tasks such as reciting the days of the week forward, naming the current president, and responding

to imaginary situations requiring social judgment. *Id.* Plaintiff reported she could perform all activities of daily life. She reported that she drove locally and made appointments, could shop online or with the assistance of her husband, and that she was be able to manage her funds. [R. 530]. Dr. Prieto diagnosed Plaintiff with Major Depressive Disorder Single Episode Moderate. *Id.*

In May 2021, Dr. Prieto again revalued Plaintiff. [R. 615]. Plaintiff's mental status report was similar to her status in 2020 and appeared to have improved as recent memory was fair. [R. 616]. Dr. Prieto diagnosed Plaintiff with Posttraumatic Stress Disorder in addition to Depressive Disorder, Single Episode Moderate. [R. 617].

    **iii.**    **November 2020 to May 2021**

In November 2020, Plaintiff was seen at the South Florida Institute of Sports Medicine due to hand pain, specifically bilateral hand and wrist pain, numbness, and tingling. [R. 702]. The X-ray exams were normal without dislocations, fractures, or arthritic changes. [R. 703]. Examinations of bilateral upper extremities were within normal limits with full range of motion, no pain or tenderness to palpitations, and 5/5 strength. [R. 702]. Plaintiff was recommended to ice her extremities 2-3 times daily for 20 minutes and not lift anything heavier than 5 pounds. [703]. Further, Mark Fishman ("Dr. Fishman") studied Plaintiff's bilateral upper extremities and found that nerve conduction and electromyography were within normal limits. [R. 704]. However, Dr. Fishman noted that "[t]he patient's clinical radicular complaints may be secondary to a focal demyelimative lesion rather than axonal degeneration." *Id.*

In December 2020, Plaintiff's lumbar/cervical MRI showed "[p]ostoperative changes with fusion and fixation hardware placement C5 through C7 levels. Multiplelevel [sic] mild degenerative, spondylitic changes with disc herniation. Mild multilevel degenerative spondylitic changes, bulgic dis herniation thoracolumbar spine." [R. 642]. Plaintiff had a second MRI scan of

7

the cervical and lumbar spine in March 2021. [R. 679]. The MRI's results were consistent with the first one, and it further stated that "[f]indings are consistent with arachnoiditis." Lastly, in May 2021, Plaintiff had another MRI, which showed multilevel spondylosis and degenerative disc disease. [R. 613]. However, the imaging revealed no compression fracture or subluxation and no prevertebral soft tissue swelling. *Id.*

In March 2021, a coronary arteriogram was performed on Plaintiff. [R. 582]. The findings showed a coronary artery calcification score of 0, which was normal, and there was no indication of stenosis, plaque, or coronary artery disease. [R. 582–84].

    **iv.**    **Dr. Pierre-Richard Edouard, MD.**

In October 2020, Dr. Pierre-Richard Edouard ("Dr. Edouard"), MD, performed an internal medicine consultative examination of Plaintiff. [532–38]. Dr. Edouard found Plaintiff to be alert, conscious, coherent, and oriented to person, place, and time. [R. 536]. Further, Dr. Edouard reported that Plaintiff had no trouble getting on and off the examination table. *Id.* Plaintiff's vision, ears, throat, and nose showed no abnormalities. [R. 537]. Plaintiff's abdomen was flat and tender with no signs of palpable mass or hernia and no organomegaly. *Id.* The neck, head, and chest exams all showed normal findings. *Id.* Plaintiff's neurological examination was normal as well. *Id.* Regarding, Plaintiff's extremities, she had a grip strength of 4/5 in both hands and a leg strength of 5/5 in both legs, pedal pulses were present and normal bilaterally, and she was able to button her shirt and turn the knob to open the door but demonstrated weak fine manipulation. *Id.* Dr. Edouard reported that Plaintiff could toe and heel walk, her gait was normal, and the supine and seated straight leg raise tests were normal bilaterally. *Id.* The examination of the back showed lumbar spine tenderness. [R. 538]. Dr. Edouard's impressions after the examination were that

Plaintiff suffered from high cholesterol, bilateral carpal tunnel syndrome, allergies, neck pain, and low back pain. *Id.*

In May 2021, Dr. Edouard conducted a second internal medicine consultative examination of Plaintiff. [R. 606–12]. Dr. Edouard's findings were similar to those of the consultative examination of October, but this time, Dr. Edouard found that the neck was supple rather than tender, he did not find lumbar spine tenderness and found that the Plaintiff's grip in both hands was 5/5 rather than 4/5. [R. 610–11]. Dr. Edouard's impressions after the examination were that Plaintiff suffered from back and neck pain, carpal tunnel syndrome, allergies, back and neck surgeries, and dyslipidemia. [R. 612].

      v.      **Odilie Reinosa and Dr. Arturo Logrono, MD.**

At her hearing in October 2021, Plaintiff testified she was currently seeing Dr. Arturo Logrono as a primary physician for pain management. [R. 65]. In July 2021, Odilie Reinosa ("Ms. Reinosa") and Dr. Arturo Logrono ("Dr. Logrono"), MD, completed a physical medical source statement. [R. 619–23, 716–20]. In the statement, Ms. Reinosa and Dr. Logrono described Plaintiff's symptoms as chronic pain in the neck, shoulders, low back, weakness in arms and hands, chest pain, numbness, tingling in arms and hands, and dizziness. [R. 619]. Based on the symptoms described, they then assessed that Plaintiff could sit and stand/walk for less than two hours during an eight-hour working day and would require 5–10-minute breaks every few minutes due to muscle weakness, pain and numbness, and adverse effects of medication. [R. 620]. Further, Dr. Logrono and Ms. Reinosa reported that Plaintiff could rarely carry items of less than 10 pounds, could rarely twist, and could never stoop, crouch, and climb stairs and ladders. [R. 621]. In addition, they stated that Plaintiff had difficulty reaching, and she had limited use of both the left and the right upper extremities to 50% or less during an eight-hour shift. *Id.* Finally, Ms. Reinosa assessed that

Plaintiff would be off task 25% or more during a workday and could not tolerate low-stress jobs. [R. 622].

The Medical Assessment of Ability to Work-Related Activities (Mental) was completed in October 2021. [722–26]. The assessment provides that Plaintiff has anxiety and depression—which affect her relationships with others, memory, and organization skills—and cannot concentrate due to the constant pain. [R. 722–23]. Further, it was reported that Plaintiff has difficulty completing certain daily activities, such as getting ready. [R. 723].

### C. Vocational Expert

At the hearing before the ALJ, the VE testified that Plaintiff's past job as a barber is described in the Dictionary of Occupational Titles as "physical demand light." [R. 82]. The VE acknowledged that the skills needed to perform a job as a barber were not transferable and unique to that job. [R. 83]. As hypothetical 1, the ALJ asked the VE whether an individual with Plaintiff's limitations could perform Plaintiff's past job as a barber. *Id*. The VE responded that such an individual could perform work as a barber. *Id.* As hypothetical 2, The ALJ asked whether the VE's opinion would change if the individual had limitations on handling and fingering bilaterally that would be limited to frequent. [R. 83–84]. The VE responded that the individual would be unable to work as a barber because "[h]andling is listed as constant in the DOT description of this position." [R. 84]. The ALJ then asked the VE if any other jobs fit hypothetical 2. *Id.* The VE answered:

> These three examples would all be within the hypothetical. The first example is the title warehouse checker, the DOT number for that title warehouse checker is 222.687-010. Physical demand is listed light, the skill level SVP: 2. Two indicates unskilled entry level. The U.S. Department of Labor, Bureau of Labor Statistics reporting shows for this DOT number in the United States there are an estimated 10,600. The second example is the title assembler small products, the DOT number for the title assembler small products, is 706.684-022, listed lights, SVP: 2, U.S.

10

>number 32, 000. The third example is the title inspector hand packer, DOT number for the title inspector hand packer is 559.687-074, listed light, SVP: 2, U.S. number 21,000.

*Id.* The ALJ then inquired about employer tolerances for workers being off task. [R. 83–84]. The VE responded that—according to his experience—"if a worker is off task 10 percent or more of the workday in addition to normal breaks on a day in, day out basis," their employer would consider them a poor employee, which would not be a competitive employee. [R. 84]. Plaintiff's counsel then asked the VE if the three jobs mentioned that fit hypothetical 2 would still be available if Plaintiff only had occasional use of bilateral arms. [R. 86]. The VE responded that they would not be available but that a ticket taker or an usher would fit the description and that they are light jobs. *Id.* Plaintiff's counsel also inquired how many unexcused absences in a month would be tolerated for an employee to remain employed. [R. 86–87]. The VE answered that employment would be terminated after two or more absences. [R. 87]. Lastly, Plaintiff's counsel asked about the transferability of skills from the barber job to an unskilled sedentary job. *Id.* The VE responded that Plaintiff would not have any transferability from skilled to unskilled. *Id.*

### D. ALJ's Findings

After the hearing, the ALJ issued a written opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. [R. 18-32]. Under the five-step sequential evaluation process for determining whether an individual is disabled, the ALJ first found, based upon Plaintiff's earnings records, that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 14, 2019. *Id.*

Second, the ALJ found that Plaintiff suffered multilevel spondylosis and degenerative disc disease of the cervical and lumbar spine status-post spinal surgeries at C5-C6 and L5-S1—severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.92(c). [R. 20]. Her other impairments of

11

posttraumatic stress disorder, major depressive disorder, high cholesterol, angina pectoris, acid reflux, carpal tunnel syndrome, obesity, and allergies, however, caused no more than minimal limitations to her ability to perform basic mental work and were therefore not severe. [R. 20–21].

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in the Commissioner's Listings. [R. 22].

Fourth, the ALJ concluded Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) subject to certain non-exertional limitations. [R. 23]. Plaintiff, for instance, could frequently kneel and crouch, occasionally stoop, crawl, and climb; she could never climb ladders, ropes, or scaffolds. *Id.* Plaintiff could tolerate occasional exposure to extreme temperatures, vibration, pulmonary irritants, and workplace hazards. *Id.* The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other record evidence. [R. 24].

The ALJ explained that the RFC assessment was supported by the evidence of the diagnostic studies conducted on Plaintiff between November 2020 and May 2021—which were relatively benign. [R. 24–26]. She noted that the Disability Determination Services ("DDS") psychological consultants, Dr. Wiener and Dr. Bruno, in October 2020 and May 2021 reviewed the record and concluded that Plaintiff's symptoms caused no more than mild difficulties and that she did not possess "severe medically determinable mental impairment." [R. 27–28]. Further, the ALJ considered statements from Dr. Rabinowitz, who had psychologically examined Plaintiff in 2017 and diagnosed her with an "adjustment disorder with depressed mood," and noted that

Plaintiff's emotional prognosis was fair. [R. 28]. However, the ALJ concluded that she did not find the assessment persuasive "as it was quite remote in time," and more recent studies have been done. *Id.* The ALJ also found Dr. Prieto's psychological examination conducted in October 2020 and May 2021 to be consistent with the record, even though the doctor did not provide a functional assessment. [R. 28–29].

The ALJ also noted the conclusions of DDS medical consultants Dr. Arkin and Dr. Desai after they reviewed the record in December 2020 and May 2021, finding that Plaintiff could perform light work with certain limitations. [R. 28]. She explained that the DDS doctors' determinations were consistent with the "physical examination findings, documenting a normal, unassisted gait and station, adequate motor and fine manipulation skills, symmetric reflexes, intact sensation, full muscle strength and tone without atrophy, and full range of motion throughout without instability, laxity, or crepitus." *Id.* Additionally, the ALJ acknowledged the internal medicine consultative examination of Plaintiff conducted by Dr. Edouard in October 2020 and May 2021. [R. 29]. She noted that although Dr. Edouard failed to provide any specific limitations and reported that Plaintiff had tenderness and reduced range of motion with cervical and lumbar spine, his examination findings were consistent with the record. *Id.*

The ALJ explained that the physical and mental assessments conducted in July 2021 and October 2021, respectively, by Ms. Reinosa and Dr. Logrono, were inconsistent with the record as they failed to acknowledge recent physical, neurological, and psychological examinations showing normal findings. [R. 29]. Further, the ALJ found the limitations reported by Ms. Reinosa and Dr. Logrono to be "extreme, excessive, inadequately supported and inconsistent with the longitudinal record" and that they only indicate limitations without providing an explanation besides the Plaintiff's diagnosis and complaints.

Finally, the ALJ explained the RFC determination was further supported by Plaintiff's statements regarding her daily activities. [R. 27]. Plaintiff reported that although Plaintiff requires some assistance, she can perform activities for her care and personal needs, as well as some household chores and prepare simple meals. *Id.* Further, she stated that she can locally drive, go out by herself, shop in stores and online, manage finances, and make necessary appointments. *Id.* Lastly, Plaintiff explained that she can "spend time with friends and family, use a computer, read, follow instructions, and watch [TV]. *Id.* The ALJ concluded: "The nature of the [Plaintiff's] treatment, the findings made during the course of the [Plaintiff's] treatment, and the [Plaintiff's] own statements about daily activities do not support a more restrictive finding. [R. 30].

The ALJ found Plaintiff could perform her past relevant work as a barber. [R. 30–31]. The ALJ concluded Plaintiff "could return to her past relevant work as a Barber as actually and generally performed in the national economy." [R. 31]. Further, the ALJ found at step five Plaintiff could also work as a warehouse worker, small products assembler, and inspector/hand packer. [31–32]. The ALJ explained that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could adjust to other work that existed in significant numbers in the national economy. [R. 32]. Ultimately, the ALJ found Plaintiff had not been disabled as defined in the Social Security Act from May 14, 2019, through the decision date. [R. 32].

## IV.   DISCUSSION

The RFC is the ALJ's assessment, based on all relevant evidence, of a claimant's ability to work despite his or her impairments. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). "Error arises only when the ALJ rejects medical evidence from the RFC 'without (at least) providing a good reason for doing so.'" *Felker v. Comm'r of Soc. Sec.*, No. 2:22-CV-221-KCD, 2023 WL 2986246, at *5 (M.D. Fla. Apr. 18, 2023) (quoting *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-CV-

14

1453-ORL-TBS, 2015 WL 1268257, at *7 (M.D. Fla. Mar. 19, 2015)). "The ALJ is not required to specifically discuss each piece of evidence so long as the decision shows that [s]he considered the claimant's condition as a whole." *Robinson v. Kijakazi*, No. 21-21603-CIV, 2022 WL 18155656, at *2 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, No. 21-21603, 2023 WL 136556 (S.D. Fla. Jan. 9, 2023) (quoting *Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 824 (11th Cir. 2021)).

Here, Plaintiff argues the ALJ did not consider evidence that demonstrated her limitations when determining her RFC. She points, for instance, to Dr. Edouard's diagnosis, the South Florida Institute of Sports Medicine recommendations, and Ms. Reinosa's assessment. [ECF No. 15 at 7–8]. Plaintiff argues the ALJ did not consider all the evidence and was highly selective when referencing the record. *Id* at 12. Defendant responds the ALJ considered Plaintiff's testimony as well as the evidence in the record. [ECF No. 17 at 4]. Defendant also argues that Plaintiff has not met her burden of showing she cannot perform her past job as a barber or other work as a warehouse worker, small products assembler, and inspector/hand packer. *Id.* at 12. The ALJ's decision, Defendant asserts, should be affirmed because it is supported by substantial evidence.

Defendant is right. The ALJ rejected Dr. Logrono and Ms. Reinosa's opinions and Plaintiff's claims about her symptoms' intensity, persistence, and limiting effects. [R. 29]. The record shows that the ALJ considered Plaintiff's condition as a whole and provided a good reason for rejecting Dr. Logrono and Ms. Reinosa's opinions. Further, Plaintiff argues that the ALJ should have included them in the RFC assessment due to her complaints of hand limitations. However, the ALJ offered support for rejecting Plaintiff's subjective claims of her hand limitations, and the Social Security Act establishes that an individual's claims regarding symptoms and pain "shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Moreover, she was not

15

required to explain every piece of evidence, including, as Plaintiff notes, Dr. Fishman's assessment. *See Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . .").

The Eleventh Circuit has explained that if the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine how they limit her work capacity. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). In assessing such symptoms and effects, the ALJ must consider: "the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms." *Id.* "If the ALJ determines that the claimant's statements about her symptoms are not credible, the ALJ must 'provide[ ] a detailed factual basis for his credibility determination,' which must be supported by substantial evidence. *Id.* (alteration in original) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

Here, the ALJ agreed that Plaintiff has a medically determinable impairment that could reasonably be expected to produce her symptoms, but she did not find credible Plaintiff's statements regarding the persistence and limiting effects of such symptoms. The ALJ then provided a detailed factual basis for her credibility determination. The record shows that the ALJ considered Plaintiff's detailed medical history, Plaintiff's statements about her daily activities, and more. [R. 24–30]. For instance, the ALJ noted that Dr. Logrono and Ms. Reinosa's assessments only listed limitations without offering an explanation other than the Plaintiff's complaints and

16

diagnosis. [R. 29]. The ALJ also explained that treatment notes demonstrated that Plaintiff was alert, fully oriented, cooperative, and in no acute distress. [R. 25]. The ALJ noted that evidence of her examinations showing no abnormalities and ranges within normal limits was inconsistent with a finding that Plaintiff would not be able to perform work activities regularly. [R. 24–25]. Finally, the ALJ noted that Plaintiff's daily activities were inconsistent with Plaintiff's allegations of disabling symptoms and limitations. [R. 27].

Plaintiff appears to suggest that, even if the ALJ correctly determined that Plaintiff's statements about the intensity of her symptoms, she should have considered Plaintiff's limited hand use. She relies on the VE's testimony that an individual limited to occasional hand use could not perform Plaintiff's past job as a barber nor the three alternate jobs as a warehouse worker, small products assembler, and inspector/hand packer. But again, Plaintiff forgets the ALJ was not required to include this alleged limitation in her hypothetical if she did not find it credible. The ALJ expressly noted that:

> Overall, the claimant's history of conservative treatment, along with normal or mild findings on both physical and mental status examinations are not consistent with her allegations regarding the severity and limiting effects of her symptoms. These inconsistencies detract from the overall persuasiveness of the claimant's subjective complaints.

[R. 26].

Because the ALJ provided specific reasons for discrediting Plaintiff's subjective complaints, and those reasons are supported by substantial evidence in Plaintiff's medical records, the Court finds that the ALJ properly rejected Plaintiff's allegations about the frequency, duration, and intensity of his symptoms. The Court respectfully **RECOMMENDS** that the Commissioner's denial of benefits be **AFFIRMED**.

## CONCLUSION

In conclusion, there is substantial evidentiary support for the ALJ's RFC evaluation. It is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment [ECF No. 15] be **DENIED**, the Commissioner's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

Objections to this Report may be filed with the district judge within **TEN** days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 12th day of October, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **All Counsel of Record**